IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN BANKHEAD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>  v.<br><br>WINTRUST FINANCIAL CORPORATION; and BARRINGTON BANK & TRUST CO., N.A.,<br><br>        Defendants. | Case No.: 1:22-cv-02759<br>Honorable John Robert Blakey<br><br>Jury Trial Demanded |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Kathleen Bankhead ("Plaintiff" or "Bankhead"), on behalf of herself and all others similarly situated, by and through her attorneys, Stowell & Friedman Ltd., hereby files this Amended Class Action Complaint against Defendants Wintrust Financial Corporation and Barrington Bank & Trust Co., N.A., (collectively "Defendants" or "Wintrust" or the "Firm"), and states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

### PARTIES

3. Defendant Wintrust Financial Corporation is a conglomeration of banks in the greater Chicagoland area based in Rosemont, Illinois, with total assets of over $50 billion in

2021.[1] Wintrust Financial Corporation is an Illinois corporation with its principal place of business in Rosemont, Illinois.

4. Defendant Barrington National Bank & Trust, N.A., is a national banking association chartered in Illinois with its principal place of business in Rosemont, Illinois, and a subsidiary of Wintrust Financial Corporation. Wintrust Financial Corporation offers financial products related to residential real estate such as mortgage loans, refinancing, and home equity lines of credit through Wintrust Mortgage, which is a division of Defendant Barrington National Bank & Trust, N.A. Wintrust Mortgage originates over $4 billion in retail mortgage loans annually, in all 50 states.[2]

5. Plaintiff Kathleen Bankhead is African American and a citizen of Illinois. As described below, Bankhead obtained a home mortgage loan from Wintrust and was discriminated against on the basis of her race in the mortgage lending process by Wintrust.

## FACTUAL ALLEGATIONS

### I. Wintrust Has and Is Engaged in Firm-Wide Systemic Discrimination Against African American Borrowers

6. As stated above, Wintrust is a major financial firm based in the Chicagoland region that offers financial products including mortgages throughout the country. Like any bank and under clear law, Wintrust must provide mortgages, and mortgage origination and underwriting, in a non-discriminatory manner. However, Wintrust applies residential mortgage policies and practices that intentionally and disproportionately discriminate against and harm Black and/or African American customers. Plaintiff, like many others, was injured by Wintrust's racially discriminatory residential mortgage lending policies and practices.

---

[1] Wintrust Fin. Corp., 10-K (Feb. 25, 2022), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001015328/65a02277-54b1-424f-9418-429f5329ce22.pdf
[2] *Our Story*, WINTRUST MORTG., https://www.wintrustmortgage.com/our-story.html

7. Wintrust uses a number of policies and practices to determine eligibility for home loans and refinancing, rates, terms, and conditions. These policies and practices impose higher costs and fees on Black and/or African American borrowers, while providing these borrowers with fewer credits to lower closing costs. These practices result in racial redlining—denying mortgages and home purchasing opportunities to Black and/or African American customers—and reverse redlining—extending predatory credit to Black and/or African American borrowers on less favorable terms and with higher interest rates, costs, and fees, and with fewer credits to reduce closing costs than Wintrust offers to non-Black, non-African American borrowers.

8. Following the filing of the initial complaint, Wintrust represented to Plaintiff that it utilizes Fannie Mae's Desktop Underwriter program. This program provides recommendations to lenders on whether to approve a mortgage loan and information on a mortgage loan's eligibility for future sale to Fannie Mae.[3] When using the Desktop Underwriter, lenders enter loan data, which includes the loan's rate.[4] Thus, Desktop Underwriter does not set the interest rate, and instead uses the interest rate to provide a recommendation on whether to approve the loan. Desktop Underwriter also does not establish costs or fees of a loan. Instead, Wintrust has its own "proprietary" policies and practices to set rates, costs, and fees. These policies and practices include the potential for loan officers to exercise discretion in setting rates, costs, and fees.

9. As a result of Wintrust's uniform policies and practices related to mortgage and refinancing approvals, interest rate determinations, fees, and costs, Wintrust approves white

---

[3] *See* Selling Guide, Fannie Mae, Chapter B3-2: Desktop Underwriter (DU), https://selling-guide.fanniemae.com/Selling-Guide/Origination-thru-Closing/Subpart-B3-Underwriting-Borrowers/Chapter-B3-2-Desktop-Underwriter-DU/#Approve.2FEligible.20Recommendations
[4] *See Id.* (explaining that lenders must enter loan data, "including data from the Form 1003"); Uniform Residential Loan Application – Lender Loan Information, https://singlefamily.fanniemae.com/media/7911/display (Form 1003, including "Note Rate" as a field in the form)

applicants for home purchase mortgage loans at substantially higher rates than Black and/or African American applicants. In 2020, for instance, according to an analysis of nationwide data published under the Home Mortgage Disclosure Act, Wintrust Mortgage originated loans to approximately 73% of white borrowers who applied for a home purchase mortgage through Wintrust Mortgage, compared to only 59.5% of Black and/or African American applicants.

10. When evaluating statistical disparities like the one described above, statisticians use a measurement called the "standard deviation" to assess the likelihood that the disparity is due to chance. The higher the standard deviation, the more the observed result deviates from the expected result and the less likely the disparity is due to random chance. Courts and statisticians consider a disparity "statistically significant"—that there is a level of confidence that random chance did not cause the disparity—at 1.96 standard deviations. In this case, the difference in approvals for Black and/or African American applicants compared to approvals for white applicants yields a difference *in excess of 10* standard deviations.

11. Wintrust is also substantially more likely to deny Black and/or African American customers' applications for home purchase loans.[5] Nationwide, in 2020, Wintrust Mortgage denied 12% of Black and/or African American borrowers' applications outright, compared to only 5.5% of white applicants. The difference is again statistically significant at over 9 standard deviations.

12. When Wintrust approves Black and/or African American customers' home purchase loan applications, it regularly does so on substantially worse terms than offered to non-Black, non-African American borrowers. Wintrust imposes a significantly higher cost of lending on Black and/or African American borrowers than white borrowers. In 2020, Black and/or

---

[5] The data include six potential actions taken: (1) loan originated; (2) application approved but not accepted; (3) application denied by financial institution; (4) application withdrawn by the applicant; (5) file closed for incompleteness; or (6) loan purchased by financial institution. Thus, some applications are neither approved nor denied.

African American borrowers nationwide had to spend, on average, 3.3% of their Wintrust Mortgage loan value on costs and fees, versus 2.9% for white borrowers. The difference is again statistically significant at over 4 standard deviations.

13. Finally, as a result of Wintrust's uniform policies and practices related to mortgage and refinancing approvals, interest rate determinations, fees, and costs, Wintrust charges Black and/or African American borrowers higher interest rates than non-African American borrowers for home purchase loans. In 2020, for instance, the national average interest rate Wintrust Mortgage charged to Black and/or African American borrowers for home purchase loans was 3.31%, versus 3.21% for white borrowers. The difference is statistically significant at over 5 standard deviations.

14. Wintrust also discriminates against Black and/or African American customers in refinancing. In recent years, with historically low interest rates, homeowners have had the opportunity to refinance their mortgage loans, which occurs when a homeowner applies for credit related to their residential real estate to change the terms of an earlier loan. Over the last two years, U.S. homeowners refinanced almost $5 trillion in mortgages, generating untold savings.[6] This could have been an opportunity for Black and/or African American homeowners to build wealth and secure their families' futures.

15. But as it does with home purchase mortgages, Wintrust discriminates against Black and/or African American borrowers in refinancing. According to an analysis of 2020 Home Mortgage Disclosure Act data, Wintrust Mortgage approved 56% of refinancing applications from Black and/or African American applicants, compared with 68.7% from white applicants. This disparity is statistically significant at approximately 11 standard deviations.

---

[6] https://www.bloomberg.com/graphics/2022-wells-fargo-black-home-loan-refinancing/

16. Wintrust Mortgage denied Black and/or African Americans borrowers' refinancing applications outright 5.6% of the time, versus 3.2% of the time for white borrowers. This disparity is statistically significant at over 5 standard deviations.

17. Similar to home purchase loans, Wintrust imposes higher costs on Black and/or African American customers who obtain refinancing. In 2020, the average cost of borrowing for a Wintrust Mortgage refinancing was 2.1% of the loan value for Black and/or African American customers versus 1.7% for white borrowers. This disparity is statistically significant at over 11 standard deviations.

18. In sum, Wintrust disproportionately refuses to lend to Black and/or African Americans. But when it does, it charges Black and/or African American borrowers higher costs and fees for less credit on worse terms than non-Black, non-African American borrowers. It also disproportionately excludes Black and/or African American borrowers from refinancing their higher-interest loans. Even when it allows Black and/or African American borrowers to refinance, Wintrust charges these borrowers higher costs and fees.

19. The racially discriminatory policies and practices at Wintrust are uniform in scope. Wintrust has created artificial, arbitrary, and unnecessary barriers to fair housing opportunities for Black and/or African American borrowers. Wintrust's policies have discriminatorily extracted an enormous amount of wealth out of Black and/or African American households through higher costs, fees, and interest rates than charged to non-Black, non-African Americans. Class members who applied for and received loans at Wintrust offices and were harmed by these same policies and practices are relying on Plaintiff to protect their rights. Wintrust's policies and practices are implemented with discriminatory intent and cause an unlawful disparate impact on Black and/or African Americans borrowers.

II. **Plaintiff Was Subjected to and Injured by Wintrust's Unlawful Conduct**

20. Plaintiff Bankhead is a well-qualified African American home borrower and well-respected member of her community. She served with distinction for more than two decades as an Assistant State's Attorney in the Cook County State's Attorney's office before she was appointed to serve as Independent Juvenile Ombudsperson for the Illinois Department of Juvenile Justice. She earned a J.D. from the Chicago-Kent College of Law and a B.S. in Criminal Justice from Bradley University.

21. In 2020, Plaintiff engaged with a Wintrust loan originator to obtain a mortgage loan with the lowest rate and most favorable terms in connection with her purchase of residential real estate in Bronzeville, a majority-Black neighborhood in Chicago.

22. Wintrust told Plaintiff that it would find her the "best rates." For example, Bankhead's loan officer wrote to her in March 2020 that Wintrust would provide her with "the best structure and rates."

23. Although Wintrust purported to find the "best rates" for Plaintiff, Wintrust instead offered Plaintiff a higher interest rate with less favorable terms and conditions because of her race and because she was purchasing property in a majority Black neighborhood.

24. Consistent with its policies and practices, Wintrust made unfavorable interest rate determinations and assessed unreasonable and unnecessary fees and costs against Plaintiff while extending her few credits to reduce closing costs.

25. For example, Wintrust offered Plaintiff a mortgage loan with an interest rate of 3.25%, which was higher than the market rate that Wintrust charged to non-African American customers. Wintrust further pressured Bankhead into obtaining a "rate lock," which would force her to maintain that rate even if interest rates decreased.

26. Although Wintrust advertised credits that would have reduced Plaintiff's closing costs, Wintrust instead required Plaintiff to apply those credits to extend the "rate lock," effectively eliminating the credit.

27. Wintrust told Plaintiff that it would give her a free "float down," which would have allowed Plaintiff to receive a lower interest rate if market interest rates decreased. For example, Plaintiff's loan officer wrote to her in March 2020 that if rates were to go down, Wintrust could "float you down for no charge."

28. Although Wintrust dangled this prospect of a free "float down," Wintrust refused to provide Plaintiff a "float down" option without a significant additional fee.

29. When Wintrust offered Plaintiff the best rate and a free float down, it had no intention of providing the best rate or a free float down to Plaintiff, an African American purchasing property in Bronzeville. It knew, however, that Plaintiff would rely on these statements in deciding to obtain a loan from Wintrust.

30. Furthermore, consistent with its pattern or practice of discrimination, Wintrust not only insisted that Plaintiff remain locked into the inflated rate beyond the expiration of the rate lock but also demanded several hundred dollars in fees to extend the rate lock.

31. Wintrust's actions ultimately forced Plaintiff into a mortgage loan with a higher interest rate, higher costs and fees, and fewer credits to lower closing costs than Wintrust charged to similarly situated non-African American borrowers.

32. Because of Wintrust's conduct, Plaintiff lost substantial funds in closing and origination costs and has been required to pay higher monthly mortgage payments than similarly situated non-African American borrowers, which continues to the present.

## CLASS ALLEGATIONS

33. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a class of Black and/or African Americans who applied for and/or received credit related to residential real estate from Wintrust or Wintrust Mortgage. Plaintiff seeks certification of a liability and injunctive and declaratory relief class under Rule 23(b)(2) and 23(c)(4), and/or certification of a class under Rule 23(b)(3). All requirements of class certification are met by the proposed class.

34. The class of Black and/or African American customers who applied for and/or received credit related to residential real estate from Wintrust or Wintrust Mortgage is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

35. There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P. 23(a)(2).

36. The claims alleged by Plaintiff are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3).

37. Plaintiff will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

38. The issue of determining liability regarding whether Defendants have engaged in race discrimination and maintain policies and practices that are intentionally discriminatory and/or have an unlawful disparate impact on Black and/or African American customers is appropriate for issue certification under Rule 23(c)(4). Other common issues are also appropriate for certification.

39. Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with regard to the class as a whole. Fed. R. Civ. P. 23(b)(2).

40. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## COUNT I

### EQUAL CREDIT OPPORTUNITY ACT
### 15 U.S.C. § 1691 *et seq.*
### (Class)

41. Plaintiff, on behalf of herself and all those similarly situated, realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

42. The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, makes it unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race.

43. As described above, Defendants are creditors because they regularly extend, renew, and continue credit, and Plaintiff was an applicant for credit.

44. Defendants maintained a set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan and refinancing applicants and recipients that constitutes illegal intentional race discrimination and unlawfully disparately impacts Black and/or African American customers in violation of the Equal Credit Opportunity Act.

45. Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

46. Defendants' unlawful conduct resulted in considerable harm to Plaintiff and all those similarly situated.

47. On behalf of herself and the class she seeks to represent, Plaintiff requests the relief set forth below.

## COUNT II

### RACE DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 1981
### (Class)

48. Plaintiff, on behalf of herself and all those similarly situated, realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

49. Under 42 U.S.C. § 1981, persons of all races are guaranteed the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

50. Defendants maintained a set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan and refinancing applicants and recipients that constitutes illegal intentional race discrimination in the making and modification of contracts in violation of 42 U.S.C. § 1981.

51. Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

52. On behalf of herself and the class she seeks to represent, Plaintiff requests the relief set forth below.

## COUNT III

### RACE DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 1982
### (Class)

53. Plaintiff, on behalf of herself and all those similarly situated, realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

54. Under 42 U.S.C. § 1982, all citizens are guaranteed the same right to inherit, purchase, lease, sell, hold, and convey real and personal property, regardless of race.

55. As set forth above, Defendants maintained a set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan and refinancing applicants and recipients that constitutes illegal intentional race discrimination and disparately impacts African Americans in violation of 42 U.S.C. § 1982.

56. Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

57. On behalf of herself and the class she seeks to represent, Plaintiff requests the relief set forth below.

## COUNT IV

### RACE DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT OF 1968 42 U.S.C § 3601 *et seq.* (Class)

58. Plaintiff, on behalf of herself and all those similarly situated, realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

59. The Fair Housing Act, 42 U.S.C. § 3605(a), prohibits any entity whose business includes engaging in residential real estate-related transactions from discriminating against any person in making available such a transaction on the basis of race.

60. Defendants' business includes engaging in residential real estate-related transactions.

61. As set forth above, Defendants maintained a set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan and refinancing applicants that constitutes illegal intentional race discrimination and unlawfully disparately impacts African Americans in violation of the Fair Housing Act of 1968.

62. Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

63. On behalf of herself and the class she seeks to represent, Plaintiff requests the relief set forth below.

## COUNT V

### PROMISSORY ESTOPPEL
### (Individual)

64. Plaintiff realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

65. Defendants unambiguously promised that they would offer Plaintiff the lowest available interest rate, favorable terms and conditions, and a free "float down" should market rates decrease.

66. Defendants did not offer the lowest available rates, extend favorable terms and conditions, or allow Plaintiff to "float down" her interest when market interest rates were significantly reduced.

67. Defendants, through their mortgage originators and loan officers, did and should have expected that Plaintiff would rely on their promises.

68. Plaintiff reasonably relied on such promises to her detriment.

69. By the above conduct, Defendants breached their promises to Plaintiff, causing Plaintiff substantial harm.

## COUNT VI

### FRAUDULENT INDUCEMENT
### (Individual)

70. Plaintiff realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

71. Defendants falsely stated the material facts that they would offer Plaintiff the lowest available interest rate, favorable terms and conditions, and a free "float down" should market rates decrease.

72. Defendants knew or believed that these statements were false at the time they made the statements, and Defendants did not offer the lowest available rates, extend favorable terms and conditions, or allow Plaintiff to "float down" her interest when market interest rates significantly fell.

73. Defendants made these statements with the intent to induce Plaintiff to agree to a "rate lock" and mortgage with Wintrust.

74. In reliance on the truth of Defendants' statements, Plaintiff agreed to a "rate lock" and mortgage with Wintrust.

75. Plaintiff was damaged by her reliance.

76. By the above conduct, Defendants breached their promises to Plaintiff, causing Plaintiff substantial harm.

## COUNT VII

### BREACH OF CONTRACT
### (Individual, in the Alternative to Count V)

77. Plaintiff realleges each and every paragraph above and incorporates them by reference as though fully stated herein.

78. Plaintiff and Defendants entered into valid and enforceable oral and written promises and agreements under which Defendants would offer Plaintiff the lowest available interest rate, favorable terms and conditions, and a free "float down" should market rates decrease.

79. Plaintiff performed under these contracts and agreements.

80. Defendants breached the contract by failing to provide the lowest available interest rate, favorable terms and conditions, or a free "float down" when market rates decreased.

81. Plaintiff was damaged by Defendants' breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court find in favor of her and the class she seeks to represent and against Defendants as follows:

a. Certify this case as a class action;

b. Designate Plaintiff as a Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c. Declare that Defendants' acts, conduct, policies and practices are unlawful and violate the Equal Credit Opportunity Act, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act;

d. Declare that Wintrust engaged in a pattern and practice of racial discrimination against Blacks and/or African Americans;

e. Order Wintrust to offer mortgage loans at non-discriminatory rates to Plaintiff and all others similarly situated, and otherwise make Plaintiff and all others similarly situated whole;

f. Order Wintrust to institute additional programmatic relief, including but not

        limited to policies and practices to avoid racially discriminatory approvals, rejections, interest rates, fees, costs, credits, terms, conditions and other policies;

g.     Award Plaintiff and all others similarly situated compensatory and punitive damages;

i.     Award Plaintiff and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

j.     Award Plaintiff and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end Defendants' discrimination and fairly compensate Plaintiff and all others similarly situated; and

k.     Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

        Respectfully submitted,

        STOWELL & FRIEDMAN, LTD.

        By: */s/ Linda D. Friedman*
            Linda D. Friedman
            Suzanne E. Bish
            George Robot
            **STOWELL & FRIEDMAN LTD.**
            303 W. Madison St., Suite 2600
            Chicago, Illinois 60606
            Phone: (312) 431-0888
            Lfriedman@sfltd.com