**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KATHLEEN BANKHEAD, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 20-cv-1121 |
| v. | Hon. John Robert Blakey |
| WINTRUST FINANCIAL CORPORATION; and BARRINGTON BANK & TRUST CO., N.A., | |
| Defendants. | Jury Trial Demanded |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**AMENDED CLASS ACTION COMPLAINT**

Linda D. Friedman
Suzanne E. Bish
George S. Robot
STOWELL & FRIEDMAN LTD.
303 W. Madison, Ste. 2600
Chicago, IL 60606
(312) 431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com

*Attorneys for Plaintiff, on behalf of herself*
*and all others similarly situated*

December 1, 2022

# TABLE OF CONTENTS

STATEMENT OF FACTS ................................................................................................................. 2

ARGUMENT ................................................................................................................................. 4

    I. Plaintiff Plausibly Alleged Disparate Impact Claim, and Defendants' Arguments Rely on a Mischaracterization of the Law and the Pleadings ............................................................. 4

        A. Defendants Mischaracterize *Inclusive Communities* and Rely on an Inaccurate Pleading Standard ............................................................................................................. 5

        B. Plaintiff Plausibly Alleges that Defendants' Policies Caused the Disparate Impact .......... 7

        C. HMDA Data Demonstrates a Disparate Impact on African Americans ........................... 11

    II. Plaintiff Plausibly Alleges a Disparate Treatment Claim .................................................... 13

    III. Plaintiff Plausibly Alleges Common Law Claims of Breach of Contract, Promissory Estoppel, and Fraudulent Inducement ................................................................................ 15

        A. Plaintiff Plausibly Alleged a Breach of Contract Claim .................................................. 15

        B. Plaintiff Plausibly Alleged a Promissory Estoppel Claim ................................................ 17

        C. Plaintiff Plausibly Alleged a Fraudulent Inducement Claim ............................................ 17

    IV. Wintrust Financial Corporation is an Appropriate Defendant ............................................ 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexander v. United States*, 721 F.3d 418 (7th Cir. 2013) ............................................................ 4

*Alleyne v. Flagstar Bank, FSB*, No. 07-cv-12128, 2008 WL 8901271 (D. Mass. Sept. 12, 2008) .................................................................................................................. 12

*Alston v. City of Madison*, 853 F.3d 901 (7th Cir. 2017) .............................................................. 14

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) ........................................ 17

*Avila v. CitiMortgage, Inc.*, 801 F.3d 777 (7th Cir. 2015) .......................................................... 15

*Bailey v. PHH Mortg. Corp.*, No. 20-cv-2577, 2021 WL 4478700 (D. Md. Sept. 30, 2021) ........ 9

*Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992) ........................................ 16

*Billhartz v. Comm'r*, 794 F.3d 794 (7th Cir. 2015) ............................................................. 15, 16

*Boswell v. City of Chicago*, 69 N.E.3d 379 (Ill. App. Ct. 2016) .................................................. 17

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009) ...................................................................... 13

*Cartwright v. Am. Savings & Loan*, 880 F.2d 912 (7th Cir. 1989) .............................................. 11

*Chen v. Urb. P'ship Bank*, No. 15-cv-06233, 2016 WL 7188165 (N.D. Ill. Dec. 12, 2016) ......... 9

*Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426 (7th Cir. 2015) ......................................................................................................................... 10

*City of Joliet v. New West, L.P.*, 825 F.3d 827 (7th Cir. 2016) ................................................. 7, 8

*Cnty. of Cook v. Bank of Am. Corp.*, 14-cv-2280, 2022 WL 408299 (N.D. Ill. Feb. 10, 2022) ..... 7

*Cnty. of Cook v. Bank of Am. Corp.*, 584 F. Supp. 3d 562 (N.D. Ill. 2022) ................................. 14

*Cnty. of Cook v. Bank of Am. Corp.*, No. 14-cv-2280, 2019 WL 6309925 (N.D. Ill. Nov. 25, 2019) .......................................................................................................................... 7

*Cnty. of Cook v. HSBC N. Am. Holdings Inc.*, 314 F. Supp. 3d 950 (N.D. Ill. 2018) .............. 4, 10

*Cnty. of Cook v. Wells Fargo & Co.*, 314 F. Supp. 3d 975 (N.D. Ill. 2018) .................................. 6

*Cont'l Cas. Co. v. Symons*, 817 F.3d 979 (7th Cir. 2016) .......................................................... 18

*Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506 (7th Cir. 2011) ..................................... 16

*Ellis v. City of Minneapolis* 860 F.3d 1106 (8th Cir. 2017) ......................................................... 8

*Frederick v. Wells Fargo Home Mortgage*, 649 F. App'x 29 (2d Cir. 2016) ............................... 9

*Gagnon v. Schickel*, 983 N.E.2d 1044 (Ill. App. Ct. 2012) ........................................................ 18

*In re Nat'l Indus. Chem. Co.*, No. 98-cv-4081, 1998 WL 887065 (N.D. Ill. Dec. 11, 1998) ....................................................................................................................................... 4, 8

*Lee v. Bd. of Governors of the Fed. Reserve Sys.*, 118 F.3d 905 (2d Cir. 1997) ......................... 11

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012) ....................................................................................................................................... 10

*Mercado v. Verde Energy USA, Inc.*, No. 18-cv-2068, 2019 WL 978531 (N.D. Ill. Feb. 28, 2019) ...................................................................................................................... 16

*Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179, 2015 WL 5542992 (N.D. Cal. Sept. 17, 2015) ...................................................................................................................... 9

*Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251 (D. Mass. 2008) ................................. 12

*Mozee v. Am. Com. Marine Serv. Co.*, 940 F.2d 1036 (7th Cir. 1991) ....................................... 14

*Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, No. 18-cv-839, 2019 WL 5963633 (N.D. Ill. Nov. 13, 2019) .................................................................................................. 12

*Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*, 294 F. Supp. 3d 940 (N.D. Cal. 2018) ............................................................................................................................ 10, 12

*Nathaniel v. Hertz Location Edition Corp.*, No. 19-cv-11154, 2020 WL 833095 (E.D. Mich. Feb. 20, 2020) ...................................................................................................... 9

*Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010) ........................................... 4, 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) ............................................................................................................ 17

*Powers v. Dole*, 782 F.2d 689 (7th Cir. 1986) ............................................................. 15

*Prop. Cas. Insurers Ass'n of Am. v. Carson*, No. 13-cv-8564, 2017 WL 2653069 (N.D. Ill. June 20, 2017) .......................................................................................................... 9

*Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553 (7th Cir. 2001) ................................. 14

*Seattle House, LLC v. City of Delaware*, No. 20-cv-3284, 2021 WL 3284742 (S.D. Ohio Aug. 2, 2021) .............................................................................................................. 6

*Soto v. City of W. Chicago*, 10-cv-3602, 2010 WL 4810612 (N.D. Ill. Nov. 19, 2010) ............. 14

*Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854 (N.D. Ill. 1999) ............................. 16

*Steele v. GE Money Bank*, No. 8-cv-1880, 2009 WL 393860 (N.D. Ill. Feb. 17, 2009) ............... 4

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)............................................. 13

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)...................................................... 4

*TBS Grp., LLC v. City of Zion*, No. 16-CV-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) ........................................................................................................................... 14

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015)................................................................................................................. passim

*Thomas v. First Fed. Savings Bank of Ind.*, 653 F. Supp. 1330 (N.D. Ind. 1987)........................ 11

*United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992)............................................. 14

*Wallace v. Chi. Hous. Auth.*, 321 F. Supp. 2d 968 (N.D. Ill. 2004) ............................. 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................... 9

*Wigginton v. Bank of Am. Corp.*, 770 F.3d 521 (7th Cir. 2014) ................................... 13

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012)................................. 17

*Winfield v. City of New York*, No. 15-cv-5236, 2016 WL 6208564 (S.D.N.Y. Oct. 24, 2016)................................................................................................................. 6

**Rules**

Policy Statement on Fair Lending, 59 Fed. Reg. 18266 ................................................. 11

Fᴇᴅ. R. Cɪᴠ. P. 9(b) ........................................................................................................ 17

Plaintiff Kathleen Bankhead ("Plaintiff" or "Bankhead") respectfully submits this Response in Opposition to Defendants' Motion to Dismiss filed by Wintrust Financial Corporation ("Wintrust") and Barrington Bank & Trust Co., N.A., ("Barrington," and, collectively, "Defendants").

The first sentence of Defendants' motion previews the flaw underlying their entire brief: Defendants assert that they do not engage in discriminatory lending and therefore Plaintiff does not state a claim. Defendants then ask the Court to dismiss Plaintiff's case because she did not prove her allegations in her pleadings. But that is not the standard, and courts do not dismiss complaints because a defendant disputes the facts. Doing so would be particularly inappropriate here, where Plaintiff's analysis of the data Wintrust provided the federal government pursuant to the Home Mortgage Disclosure Act ("HMDA") reveals that Defendants approve disproportionately fewer Black applicants for mortgage and refinancing loans, and, when they do approve Black borrowers, Defendants originate loans with higher interest rates, costs, and fees. These disparities are highly statistically significant, meaning that they are not due to chance and are instead caused by Defendants' discriminatory policies. Indeed, the odds that the disparities in interest rates were caused by chance is less than *one in 1.25 million*. For approvals, that number is less than *one in one quintillion*. In the face of these stark disparities, Defendants ask this Court to hold that a Black borrower can do nothing about it, even under the Fair Housing Act ("FHA"), which Congress enacted to "eradicate discriminatory practices" in the housing market after a federal commission found that America was "moving toward two societies, one black, one white—separate but unequal." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 529, 539 (2015) (internal quotations omitted).

In their motion, Defendants seek to gut the FHA and leave Black borrowers without any

remedy by imposing a heightened pleading standard insulating them from suit, let alone liability. On disparate impact, they fault Plaintiff for not *proving* her claims in her pleadings, contorting the Supreme Court's *Inclusive Communities*—which came to the Supreme Court on review from a bench trial, held for the plaintiffs, and confirmed the FHA's broad scope—beyond recognition. Their proposed standard would make it all but impossible to plead a disparate impact claim without intricate knowledge of a defendant's innerworkings and access to non-public data. On disparate treatment, Defendants ignore both Seventh Circuit law on the pleading standard for intentional housing discrimination and Plaintiff's classwide pattern-and-practice allegations.

Defendants' attacks on Plaintiff's common law claims similarly rely on arguments more appropriate for summary judgment. Plaintiff alleges that Defendants offered to provide her the lowest available interest rate and a free float down, but did neither, plausibly stating a claim for breach of contract, promissory estoppel, and fraudulent inducement.

## STATEMENT OF FACTS

Plaintiff Kathleen Bankhead is a well-qualified African American home borrower. (Dkt. 22, ¶ 20). In 2020, she began working with one of Defendants' loan originators to obtain a loan for the purchase of a home in Bronzeville, a majority-Black neighborhood. (*Id.* at ¶ 21). To induce her to originate a loan, Defendants assured her that they would provide the lowest available interest rate and offered her a free float down, which would have provided a lower interest rate if market interest rates decreased. (*Id.* at ¶¶ 22, 27, 65). Despite these representations, Defendants denied Plaintiff a free float down and offered her a mortgage loan with an interest rate that was higher than the market rate charged to similarly situated non-Black borrowers. Worse, they pressured her into obtaining a "rate lock," which required her to maintain that rate even if interest rates decreased. (*Id.* at ¶ 25). Defendants' actions forced Plaintiff into a mortgage loan with a higher interest rate and costs than charged to similarly situated non-Black borrowers.

(*Id.* at ¶ 31). As a result, Plaintiff lost substantial funds in closing and origination costs and pays higher monthly mortgage payments than similarly situated non-Black borrowers. (*Id.* at ¶ 32).

That Defendants treated Plaintiff worse because she is Black is not unique. Instead, Defendants treated Plaintiff the same way it treats other Black borrowers, applying residential mortgage policies and practices that intentionally discriminate against and harm Black borrowers. (*Id.* at ¶ 6). In both mortgage loans and in refinancing, Defendants utilize their own proprietary policies and practices to set interest rates, costs, and fees, and employees can exercise discretion in accordance with company-wide policies. (*Id.* at ¶ 7). Defendants represent that to underwrite loans, they utilize Fannie Mae's Desktop Underwriter ("DU"), which uses inputs from Defendants (including the interest rate) to recommend whether to approve a loan. (*Id.* ¶ 8). These policies and practices were enacted with discriminatory intent and impose higher costs and fees on Black borrowers, resulting in both racial redlining and reverse redlining. (*Id.* at ¶ 19).

Wintrust's HMDA data lays bare the stark discriminatory impact of these policies. In 2020, Defendants originated loans to roughly 73% of white borrowers who applied for a home purchase mortgage, but only 59.5% of Black borrowers. (*Id.* at ¶ 9). The difference is statistically significant at greater than 10 standard deviations. In other words, the odds of Defendants' worse treatment of Black applicants occurring by chance is less than one in one quintillion. (*Id.* at ¶ 10). Instead, this treatment is a result of Defendants' discriminatory policies. Defendants also charge Black borrowers higher interest rates, fees, and costs. (*Id.* at ¶¶ 12–13). This worse treatment extends to refinancing, denying Black homeowners the opportunity to build wealth. (*Id.* at ¶¶ 14-17). The differences in approvals, denials, interest rates, and costs are statistically significant for home origination loans and refinancing. (*Id.* at ¶¶ 10–17). At bottom, Defendants' policies for setting interest rates and costs and for approving loans and refinancing create an artificial,

arbitrary, and unnecessary barrier to fair housing opportunities for Black borrowers. (*Id.* at ¶ 19).

## ARGUMENT

"The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). "[T]he plausibility requirement demands only that a plaintiff provide sufficient detail to present a story that holds together." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (quotations omitted). Courts must "accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff," *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010), and their review is limited "to the factual allegations contained within the four corners of the complaint," *In re Nat'l Indus. Chem. Co.*, No. 98-cv-4081, 1998 WL 887065, at *2 (N.D. Ill. Dec. 11, 1998).[1] Ignoring these familiar standards, Defendants ask the Court to adopt their version of the facts and dismiss Plaintiff's complaint for failing to prove her claims in her pleadings.

**I.     Plaintiff Plausibly Alleged a Disparate Impact Claim, and Defendants' Arguments Rely on a Mischaracterization of the Law and the Pleadings**

As the Supreme Court explained, to plead a disparate impact claim under the FHA,[2] a plaintiff need only allege defendant's policies caused a disparate impact. *Inclusive Communities*, 576 U.S. at 541–43; *see also Cnty. of Cook v. HSBC N. Am. Holdings Inc.,* 314 F. Supp. 3d 950, 967 (N.D. Ill. 2018) ("[T]he Supreme Court in *Inclusive Communities* stated only that a plaintiff must allege facts sufficient to support a causal connection between the challenged policy or policies and a disparate impact."). Defendants insist on a heightened pleading standard and warp *Inclusive Communities* to do so. When analyzed through Rule 8(a)'s notice pleading standards,

---

[1] As such, Defendants' attorneys' rhetoric about their lending practices (at 2) should not be considered.
[2] Courts analyze claims under the Equal Credit Opportunity Act under the same standard. *Steele v. GE Money Bank*, No. 8-cv-1880, 2009 WL 393860, at *3 (N.D. Ill. Feb. 17, 2009).

the complaint more than plausibly alleges that Defendants' policies caused a disparate impact.

### A. Defendants Mischaracterize *Inclusive Communities* and Rely on an Inaccurate Pleading Standard

Defendants structure their argument around *Inclusive Communities*, but their attempt to stylize it as a case establishing a heightened pleading standard for housing discrimination claims is misleading. There, the plaintiff challenged Texas's provision of tax credits for developing low-income housing in Black neighborhoods in cities as opposed to white ones in suburbs—a far cry from Bankhead's claims about blatant statistical disparities between Defendants' treatment of Black and white borrowers and applicants. 576 U.S. at 526. After discovery and a bench trial on a full record (not a motion to dismiss), the district court held that the plaintiff established a prima facie case of disparate impact based on only "two pieces of statistical evidence" regarding the low portion of tax incentives provided for housing in white areas. *Id.* The Supreme Court took up the case to resolve what was at the time an issue of first impression: whether disparate impact cases are cognizable under the FHA. *Id.* at 525. It held that they are, confirming the law's broad scope and "continuing role in moving the Nation toward a more integrated society." *Id.* at 547.

The Court was also jarred by the plaintiff's "novel theory of liability" that "may be seen simply as an attempt to second-guess which of two reasonable approaches a housing authority should follow in the sound exercise of its discretion in allocating tax credits for low-income housing." *Id.* at 541. Wary of making judicial policy, incentivizing racial quotas, or discouraging private investment, the Court opined that the defendants should prevail on remand if the plaintiff failed to adduce evidence proving that the defendant's policy caused a disparate impact. *Id.* at 541–43. It provided guidance on how to prove (not plead) disparate impact liability, including what a Plaintiff must prove at trial to establish a prima facie case and how after a plaintiff demonstrates disparate impact, the defendant may attempt to show that a business necessity

justifies the policy at issue. *Id.* at 541. Defendants (at 4–5) misleadingly parse together two separate sentences from *Inclusive Communities* to claim that that case held plaintiffs must make out a prima facie case at the pleading stage. However, the Court was discussing a plaintiff's burden of proof, and in doing so made the commonsense point that to reach summary judgment or trial, a plaintiff must allege facts at the pleading stage. *Id.* at 543. The Court did not equate the prima facie burden of proof with the pleading standard. *See Cnty. of Cook v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 992–93 (N.D. Ill. 2018); *Winfield v. City of New York*, No. 15-cv-5236, 2016 WL 6208564, at *6 (S.D.N.Y. Oct. 24, 2016). And regardless of whether the term "prima facie" applies to FHA pleadings, the implication of Defendants' argument—that a plaintiff's burden in her pleadings is the same as her burden of proof at trial—cannot be correct.

Despite this context and procedural posture, Defendants would have the Court believe that *Inclusive Communities* slams the courthouse door on a plaintiff alleging race discrimination supported by egregious statistical disparities. However, in contrast to the claim in *Inclusive Communities*, Plaintiff Bankhead's claim is what the Court called a "heartland" disparate-impact claim "targeting artificial barriers to housing." *Id.* at 540. And the issue here is whether she pleaded a claim, not whether she made out a prima facie case after full discovery and a bench trial. As numerous courts have held, *Inclusive Communities* "did not alter the plausibility standard for pleading, which requires only the plaintiff plead allegations that plausibly give rise to an inference that the challenged policy causes a disparate impact." *Winfield*, 2016 WL 6208564, at *6; *see also, e.g.,. Wells Fargo & Co.*, 314 F. Supp. 3d at 992–93 (explaining that for FHA disparate impact claim "[a]t the pleading stage of a lawsuit, it is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination" (internal quotes omitted)); *Seattle House, LLC v. City of Delaware*, No. 20-cv-3284, 2021 WL 3284742, at *5

(S.D. Ohio Aug. 2, 2021) (rejecting argument that *Inclusive Communities* heightened pleading standard). In fact, Defendants (at 6) rely on cases explaining what a plaintiff must prove to establish liability, not what a plaintiff must plead to have the opportunity to establish liability. *See Cnty. of Cook v. Bank of Am. Corp.*, 14-cv-2280, 2022 WL 408299, at *1 (N.D. Ill. Feb. 10, 2022) (ruling on motion for summary judgment); *City of Joliet v. New West, L.P.*, 825 F.3d 827, 830 (7th Cir. 2016) (appeal from trial). Plaintiff easily meets the pleading standard by plausibly alleging that Defendants' policies caused a racially disparate impact.

**B.      Plaintiff Plausibly Alleges Defendants' Policies Caused a Disparate Impact**

Plaintiff alleges that Defendants' policies and practices for determining eligibility for home loans and refinancing and for setting rates, terms, and conditions result in discriminatory denial of credit, racial redlining, and the extension of predatory credit to Black borrowers on less favorable terms. (Dkt. 22, at ¶¶ 7–8). These policies and practices include the potential for loan officers to exercise discretion in accordance with company-wide policies, including in setting costs and interest rates. (*Id.*). The Court must accept these allegations as true. Defendants do not deny that such policies exist or argue that they have no method for establishing rates, terms, and conditions of loans (nor would it be appropriate to refute facts in a motion to dismiss). Attempting to overcome this insurmountable barrier, Defendants simply avoid discussing these allegations altogether by falsely characterizing Plaintiff's complaint as not alleging any policies whatsoever. (Memo at 5, 8). And any argument that a plaintiff must allege the details of specific policies with more specificity but without the benefit of discovery is yet another request to gut the FHA and insulate Defendants from suit for discriminating against Black borrowers and applicants. Indeed, courts have compelled discovery that "may shed light on the specific policies and practices" at issue in an FHA disparate impact claim—plainly acknowledging that a plaintiff could not allege the details of these policies. *Cnty. of Cook v. Bank of Am. Corp.*, No. 14-cv-

2280, 2019 WL 6309925, at *5 (N.D. Ill. Nov. 25, 2019).

Confusingly, after arguing that Plaintiff alleged no policies whatsoever, Defendants then hide behind Plaintiff's allegations regarding their represented policy of using DU, a third-party system that recommends whether to approve a loan. (Memo at 7–8). Defendants go so far as to suggest that their represented use of DU should insulate them not only from liability, but from suit. However, neither Plaintiff nor the Court knows how often Defendants implement DU's recommendations,[3] the impact of Defendants' choice of interest rate on DU's recommendation, or whether DU itself causes racial disparities. Despite these questions, Defendants ask this Court to rule that as a matter of law, if a defendant simply purports to use a third-party software to underwrite loans, it cannot be subject to an FHA lawsuit, regardless of whether its loans are discriminatory or what factors that software uses. This is far afield from Rule 8(a), and Plaintiff should be permitted to test this defense through discovery so that the Court may resolve these issues on a full record.

The inapplicability of Defendants' caselaw reflects the weakness of their argument. For starters, many of the cases allege policies disavowed by the Supreme Court and not at issue here. First, the Seventh Circuit in *City of Joliet* found (after a bench trial) that the condemnation of a building could not form the basis of a disparate impact claim because, as stated in *Inclusive Communities*, "a one-time decision may not be a policy at all." 825 F.3d at 830 (quoting *Inclusive Communities*, 576 U.S. at 543)). In *Ellis v. City of Minneapolis*, the Eighth Circuit found that plaintiffs failed to plead a disparate impact claim based on the "policy" of heightened,

---

[3] Defendants posit (at 7) that lenders cannot override DU's credit decision. However, in addition to asking the Court to impermissibly rely on facts outside of the pleadings, this argument misrepresents how DU functions. *In re Nat'l Indus. Chem. Co.*, 1998 WL 887065, at *2. Fannie Mae's Selling Guide makes clear that lenders need not lend to every applicant DU recommends. *See* Selling Guide B3-6: Liability Assessment, available at bit.ly/3OkqVUX.

targeted enforcement of the housing code. 860 F.3d 1106, 1108 (8th Cir. 2017). However, as the Eighth Circuit explained, *Inclusive Communities* specifically rejected a prior Eighth Circuit case permitting a disparate impact claim based on this theory. *Id.* at 1110–11. Here, in contrast, Plaintiff brings a "heartland" disparate-impact claim "targeting artificial barriers to housing," not a city's enforcement of its housing code. *Inclusive Communities*, 576 U.S. at 541.

Many of Defendants' other cases involve complaints that fail to allege any statistics or other facts suggesting a disparate impact whatsoever. *See Frederick v. Wells Fargo Home Mortgage*, 649 F. App'x 29, 30 (2d Cir. 2016) (finding in an out-of-circuit, unpublished decision that a serial, pro se plaintiff failed to state a claim when complaint "failed to allege any statistical evidence" demonstrating a disparate impact); *Chen v. Urb. P'ship Bank*, No. 15-cv-06233, 2016 WL 7188165, at *4 (N.D. Ill. Dec. 12, 2016) (dismissing pro se complaint when "entirety" of the allegation consisted of statement that plaintiff would later prove a violation through a statistical analysis but alleged no facts about a disparate impact); *Bailey v. PHH Mortg. Corp.*, No. 20-cv-2577, 2021 WL 4478700, at *8 (D. Md. Sept. 30, 2021) (dismissing disparate impact claim where plaintiffs merely stated policy had disparate impact with no supporting statistics or facts); *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179, 2015 WL 5542992, at *18 (N.D. Cal. Sept. 17, 2015) (finding plaintiffs failed to plead disparate impact claim when alleged "statistics fail[ed] to show disparate impact on a protected class"). Plaintiff, on the other hand, analyzed Wintrust's own HMDA data to allege detailed statistics exposing stark racial disparities.[4]

Defendants make much ado about a reference to discretion in a class action complaint

---

[4] The remainder of Defendants' cases simply aren't relevant. *Prop. Cas. Insurers Ass'n of Am. v. Carson*, No. 13-cv-8564, 2017 WL 2653069, at *2 (N.D. Ill. June 20, 2017) (reviewing challenge to FHA regulations under the Administrative Procedure Act); *Nathaniel v. Hertz Location Edition Corp.*, No. 19-cv-11154, 2020 WL 833095 (E.D. Mich. Feb. 20, 2020), at *1 (considering whether plaintiff stated claim under a Michigan state law based on rental car company's refusal to accept debit cards in certain areas).

filed after *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). (Memo at 7 n.8). However, their caselaw is equally unavailing on this point. First, their cases relate to class certification and are not relevant here. More significantly, conspicuously absent from the Defendants' citations are any cases in this Circuit. The Seventh Circuit has interpreted *Walmart* to mean that discretion can support class certification. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012); *see also Chi. Tchrs. Union v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 439 (7th Cir. 2015) ("[S]ubjective, discretionary decisions can be the source of a common claim."); *HSBC N. Am. Holdings Inc.*, 314 F. Supp. 3d at 967–68 (rejecting defendant's argument that policy based on discretion cannot form basis for FHA disparate impact claim because *Walmart* confirmed that grant of discretion can form basis of claim).

Finally, Plaintiff plausibly alleges that Defendants' policies caused the disparate impact. The worse outcomes for Defendants' Black borrowers and applicants are highly statistically significant; these outcomes did not happen by chance. (Dkt. 22, at ¶¶ 10–13, 15–17). The odds that the disparities in interest rates were caused by chance is less than *one in 1.25 million*. For approvals, that number is less than *one in one quintillion*. Instead of chance, disparities regarding interest rates, costs, and approval and denial rates are caused by Defendants' policies for setting interest rates and costs and approving or denying borrowers. Defendants (at 5–6) cling to the Supreme Court's statement that a "robust causality requirement . . . protects defendants from being held liable for racial disparities they did not create." *Inclusive Communities*, 576 U.S. at 542. But the issue here is not whether Defendants should be held liable; it is whether Plaintiff plausibly alleged a claim so that she may obtain discovery. *See Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*, 294 F. Supp. 3d 940, 948 (N.D. Cal. 2018) ("Plaintiff's complaint gives rise to a fair inference of causation; the question of proof will become an issue at later stages in the

proceedings."). And Plaintiff adequately alleged that Defendants, through their policies, did create the racial disparity. In short, Defendants fault Plaintiff for not proving her disparate impact claim in her complaint. That is far from the pleading standard, and Defendants' position would deny Black borrowers any remedy for blatant racial disparities.

### C.    HMDA Data Demonstrates a Disparate Impact on African Americans

Prior to filing the complaint, Plaintiff conducted a statistical analysis of Wintrust HMDA data that exposed stark, statistically significant disparities between Defendants' Black and non-Black borrowers and applicants across the board. (Dkt. 22, ¶¶ 9–17). For both home origination loans and refinancing, Defendants approve disproportionately fewer Black borrowers and charge them higher interest rates and costs. (*Id.*). These differences are statistically significant, meaning that it is nearly impossible that they were caused by chance. (*Id.*). Defendants do not refute these statistics and instead attempt to dismiss them as "conclusory." (Memo at 1–2). But they are not legal conclusions—they are facts that the Court must accept as true. *See Parish*, 614 F.3d at 679.

Defendants argue that Plaintiffs cannot use HMDA data to plead a claim. But tellingly, they rely on caselaw (at 10) about proving liability, not pleading it. *See Lee v. Bd. of Governors of the Fed. Reserve Sys.*, 118 F.3d 905, 915 (2d Cir. 1997) (upholding agency approval of merger, noting that HMDA data alone is insufficient for "*conclusively determining* whether an institution has engaged in illegal discrimination" (emphasis added)); *Cartwright v. Am. Savings & Loan*, 880 F.2d 912, 922 (7th Cir. 1989) (upholding ruling after trial); *Thomas v. First Fed. Savings Bank of Ind.*, 653 F. Supp. 1330, 1340 (N.D. Ind. 1987) (bench trial). Defendants' other sources fare no better. For example, the Policy Statement on Discriminatory Lending states that "HMDA data alone do not prove lending discrimination," but says nothing about the use of data to plead lending discrimination. 59 Fed. Reg. 18266, 18270. It goes on to explain that HMDA data can provide "red flags" necessitating further investigation. *Id.* This is exactly what Plaintiff

seeks here: discovery so that she may further investigate Defendants' lending. In short, Plaintiffs may use HMDA data to plead FHA claims; Defendants' argument that "HMDA data, standing alone, does not show disparate discriminatory impacts " is "better suited for summary judgment or trial."[5] *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 258 n.15 (D. Mass. 2008).

Defendants next argue that Plaintiff did not allege a disparate impact because her statistics do not control for certain factors such as debt-to-income ratio and credit. (Memo at 8). This argument ignores Supreme Court law and, worse, cannot have been made in good faith. First, Defendants ignore the Supreme Court's instructions that it is their burden to show that a business necessity justifies the policy at issue. *Inclusive Communities*, 576 U.S. at 541. It "is not Plaintiffs' burden at the pleading stage to explain potential nondiscriminatory reasons for Defendants' conduct." *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, No. 18-cv-839, 2019 WL 5963633, at *14 (N.D. Ill. Nov. 13, 2019); *see also Nat'l Fair Hous. All.*, 294 F. Supp. 3d at 948 ("[C]ontentions regarding whether the Plaintiffs' methodology is flawed are best reserved for resolution at summary judgment."). Defendants (at 2) similarly fault Plaintiff for not controlling for geographic location. However, this fails to recognize that most loans appear to be centralized in Illinois and that location is often itself tainted by race.

Worse than being irrelevant at this stage, Defendants' argument is mendacious. They argue that Plaintiff should have controlled for certain factors, which is only possibly relevant if these controls would undermine Plaintiff's allegations. Yet the factors they suggest (debt-to-income ratio, credit, and location) either do not change the outcome or are not publicly available. This Court instructs a party to "confirm whether, in its view, any deficiencies identified by the

---

[5] In arguing otherwise, Defendants rely on *Alleyne v. Flagstar Bank, FSB*, No. 07-cv-12128, 2008 WL 8901271, at *4 n.5 (D. Mass. Sept. 12, 2008), which commented on the use of HMDA data. However, it did so in dicta, and its insistence that plaintiffs must control for certain variables in pleading disparate impact directly contradicts the burden shifting regime from *Inclusive Communities*, as discussed below.

motion to dismiss could be cured by amendment." To this end, Plaintiff has run additional analyses on Wintrust HMDA data controlling for location and debt-to-income ratio (credit scores are not publicly available) and the results remain statistically significant nearly across the board. For example, the odds that the racial disparities in loan approvals occurred by chance remain less than one in 250,000, and for disparities in interest rates that number is one in 50 million. Defendants have at least the same access to data as Plaintiff and therefore must know their argument is a disingenuous red herring. And if Defendants are willfully ignorant on this point, then the argument relies on the invidious assumption that Black borrowers and applicants are always less credit worthy, exactly the kind of discrimination Plaintiff seeks to challenge.

Plaintiff maintains that the statistics alleged in her Amended Complaint are sufficient. Holding otherwise raises the bar impermissibly high for civil rights plaintiffs by requiring them to conduct expensive expert analyses on incomplete datasets. That said, if the Court wishes to consider a complaint with further statistics, Plaintiff can include them in an amended complaint.

## II. Plaintiff Plausibly Alleges a Disparate Treatment Claim

Plaintiff alleges that, because of her race, Defendants issued her a loan with a higher interest rate, costs, and fees and denied her a free float down. (Dkt. 22, ¶¶ 6, 19, 29, 30). She also alleges that, like the class she seeks to represent, she was treated worse than similarly situated white borrowers and was subjected to Defendants' pattern or practice of intentional discrimination. (*Id.* at ¶¶ 9, 19, 24, 30–32). In arguing to the contrary, Defendants once again rely on a heightened pleading standard and mischaracterize Plaintiff's complaint.

The Seventh Circuit has explained that to plead intentional housing discrimination, a plaintiff need only allege "the type of discrimination that she thinks occurred," "when," and "by whom." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). As the Seventh Circuit has repeatedly held, "intent may be pleaded generally . . . lack of detail does not permit

dismissal." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *see also Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014) ("It does not take much to allege discrimination."). Plaintiff's complaint easily meets this burden. Given this, it is no wonder that many of Defendants' cases again relate to proving discrimination, not pleading it. *See Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (ruling on summary judgment); *Cnty. of Cook v. Bank of Am. Corp.*, 584 F. Supp. 3d 562, 570 (N.D. Ill. 2022) (same); *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 560 (7th Cir. 2001) (same). The only two cases involving motions to dismiss are irrelevant to Defendants' argument that Plaintiff failed to plead discriminatory intent as those cases do not concern intent and instead conclude that the plaintiff failed to allege disparate treatment at all. *TBS Grp., LLC v. City of Zion*, No. 16-CV-5855, 2017 WL 5129008, at *6 (N.D. Ill. Nov. 6, 2017) (dismissing disparate treatment claim based on selective enforcement of housing codes due to lack of allegations of selective enforcement)[6]; *Soto v. City of W. Chicago*, 10-cv-3602, 2010 WL 4810612, at *7 (N.D. Ill. Nov. 19, 2010) (same). Here, there is no question that Plaintiff alleged that Defendants treated her differently based on her race.

Perhaps more importantly, in downplaying Plaintiff's statistical evidence, Defendants ignore that Plaintiff alleges she and other Black applicants and borrowers were subjected to a pattern and practice of discrimination on a class-wide basis. *See Wallace v. Chi. Hous. Auth.*, 321 F. Supp. 2d 968, 971 (N.D. Ill. 2004) (holding private parties may bring FHA pattern-or-practice claims). Pattern-or-practice allegations are a method of proving intentional discrimination "through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the [defendant's] intent to treat the protected class unequally." *Mozee v. Am. Com. Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991); *United States v. Balistrieri*, 981 F.2d

---

[6] The other claim at issue in *TBS Group*—whether the city enacted an ordinance with discriminatory intent—implicates a different standard than the one at issue here. *See* 2017 WL 5129008, at *6.

916, 929 n.2 (7th Cir. 1992) (explaining pattern-or-practices cases brought under other discrimination laws are relevant to FHA cases). Here, Plaintiff alleges that Defendants acted with discriminatory intent in enacting their policies, issuing her a loan with a higher interest rate than charged to non–Black borrowers, and denying her a free float down. She provides undeniable statistical evidence demonstrating that Defendants engage in a pattern or practice of approving disproportionately fewer Black applicants and charging them higher interest rates, costs, and fees. As "statistical evidence can be relied upon to establish that the defendant intended to discriminate against the plaintiff" at summary judgment, surely it must be worth something in the pleadings. *Powers v. Dole*, 782 F.2d 689, 695 (7th Cir. 1986). Thus, there is no question that Plaintiff plausibly alleged that Defendants treated her differently because of her race.

### III.    Plaintiff Plausibly Alleges Common Law Claims of Breach of Contract, Promissory Estoppel, and Fraudulent Inducement

Plaintiff alleges that to induce her to originate a loan with them, Defendants made false promises and representations that she would receive the lowest available rate and a free float down. (Dkt. 22, ¶¶ 22, 27). However, Defendants had no intention of providing either to Plaintiff. (*Id.* at ¶ 29). Because of these bait-and-switch tactics, Plaintiff lost substantial funds in closing costs and pays higher monthly payments. (*Id.* at ¶ 31). Based on Defendants' conduct, Plaintiff brings claims of breach of contract, promissory estoppel, and fraudulent inducement.

#### A.    Plaintiff Plausibly Alleged a Breach of Contract Claim

Plaintiff plausibly alleges "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir.

2015). Defendants wrongly argue that Plaintiff failed to allege the first and third elements.[7]

First, Plaintiff alleges that she and Defendants entered into a valid and enforceable oral and written contract that Defendant would originate a loan with the "lowest available interest rate, favorable terms and conditions, and a free 'float down.'" (Dkt. 22, ¶¶ 22, 27, 78). Defendants argue that there was in fact no enforceable contract, but "[t]o survive a motion to dismiss, [a plaintiff] need only allege—rather than prove—the existence of a valid contract." *Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854, 855 (N.D. Ill. 1999) (internal quotations omitted). Tellingly, Defendants once again rely on summary judgment cases supporting a motion to dismiss. *See, e.g.*, *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 516 (7th Cir. 2011) (determining the existence of a contractual term at summary judgment); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1441 (7th Cir. 1992) (same); *see also Mercado v. Verde Energy USA, Inc.*, No. 18-cv-2068, 2019 WL 978531, at *2 (N.D. Ill. Feb. 28, 2019) (declining to consider summary judgment cases on motion to dismiss contract claim because "the standards are very different"). Defendants' argument about whether the term "lowest available interest rate" is sufficiently definite to form a contract is similarly a question of fact for summary judgment or trial. *See Mercado*, 2019 WL 978531, at *2 (holding whether rate tied to "market conditions" is ambiguous is best left for summary judgment). Moreover, Defendants make no argument regarding whether the offer of a free float down is sufficiently definite to form a contract (it is), and have waived any argument to the contrary. *See Billhartz*, 794 F.3d at 801 n.4.

Plaintiff also alleges that Defendants breached this contract by forcing her into a loan with a higher interest rate, costs, and fees than Defendants charged to similarly situated non-Black borrowers and by refusing to provide Plaintiff a float down without a significant fee. (Dkt.

---

[7] Defendants have therefore waived any argument that Plaintiff failed to allege the remaining elements, though she has. *See Billhartz v. Comm'r*, 794 F.3d 794, 801 n.4 (7th Cir. 2015).

22, ¶ 28, 31). Thus, Plaintiff plausibly pleads a breach of contract claim through either or both of her allegations regarding the lowest interest rate and regarding a free float down.

### B.    Plaintiff Plausibly Alleged a Promissory Estoppel Claim

Plaintiff stated a promissory estoppel claim by alleging that she foreseeably relied on Defendants' promises regarding the lowest available interest rate and a free float down to her detriment. (Dkt. 22, ¶¶ 22, 27, 28, 31, 65–69); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (elements of promissory estoppel). Defendants first attack this claim in the same way it attacks her breach of contract claim: arguing that the promises were insufficiently definite. But for the same reasons the statements were sufficiently definite to form a contract, they are sufficiently definite for a promissory estoppel claim. Defendants again waive any argument regarding the definiteness of the promise of a free float down. Further, contrary to Defendants' argument, "breach of contract and promissory estoppel claims can be pled in the alternative." *Boswell v. City of Chicago*, 69 N.E.3d 379, 385 (Ill. App. Ct. 2016).

### C.    Plaintiff Plausibly Alleged a Fraudulent Inducement Claim

Plaintiff's fraud allegations plead the "who, what, when, where, and how" of the fraud sufficient to meet Rule 9(b)'s pleading standard. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011). She alleged that in March 2020, her loan officer wrote her that Defendants would provide her "the best structure and rates" and could "float [her] down for no charge." (Dkt. 22, ¶¶ 22, 27). Defendants were aware these statements were false but would induce Plaintiff to originate a loan with them.[8] (*Id.* at ¶ 29).

Contrary to Defendants' argument, these statements were not mere puffery. Puffery "denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his

---

[8] Even for fraud, intent and knowledge "may be alleged generally." FED. R. CIV. P. 9(b).

or her product, the truth or falsity of which cannot be precisely determined." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846–47 (Ill. 2005). Here, the offer of the lowest available rate or a free float down are concrete representations and their falsity can be easily determined.[9]

## IV.     Wintrust Financial Corporation is an Appropriate Defendant

Defendant Wintrust argues (at 15) that it cannot be liable because Plaintiff alleges that only Defendant Barrington issues mortgages. However, Plaintiff alleges that "*Wintrust Financial Corporation* offers financial products related to residential real estate mortgage loans, refinancing, and home equity lines of credit." (Dkt. 22, ¶ 4 (emphasis added)). Wintrust also argues that Plaintiff has not pleaded facts sufficient to pierce the corporate veil. However, "veil-piercing is a highly fact-intensive inquiry." *Cont'l Cas. Co. v. Symons*, 817 F.3d 979, 993 (7th Cir. 2016). Plaintiff's mortgage states that it was issued by "Wintrust Mortgage" (Dkt. 24-1), and in Defendant Wintrust's SEC filings, it reports its own financial statements consolidated with its subsidiaries like Barrington.[10] These facts suggest an overlap in corporate identity and the Court should decide this issue on a developed record, not on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated: December 1, 2022.

Respectfully submitted,

*/s/ Linda D. Friedman*

Linda D. Friedman
Suzanne E. Bish
George S. Robot

---

[9] Defendants' reliance on the archaic "promissory fraud" rule is unavailing, as the case that explains that rule also explains that it has been swallowed by its exception (that statements regarding future actions are actionable when fraud is part of a scheme), which applies here. *Gagnon v. Schickel*, 983 N.E.2d 1044, 1054 (Ill. App. Ct. 2012).

[10] Wintrust Financial Corporation, Form 10-Q, at 1–5 (September 30, 2022), available at bit.ly/3VlTJza

STOWELL & FRIEDMAN LTD.
303 W. Madison, Ste. 2600
Chicago, IL 60606
(312) 431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com

**CERTIFICATE OF SERVICE**

I, Linda D. Friedman, hereby certify that on December 1, 2022, I filed the foregoing

*Response in Opposition to Defendants' Motion to Dismiss* via the Court's CM/ECF system,

which caused a copy of the same to be served upon all counsel of record via ECF.


*/s/ Linda D. Friedman*