UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN BANKHEAD, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:22-CV-2759 |
| v. | |
| WINTRUST FINANCIAL CORPORATION and BARRINGTON BANK & TRUST CO., N.A., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In a Second Amended Complaint ("SAC"), Plaintiff Kathleen Bankhead, on behalf of herself and a putative class of others similarly situated, sues Wintrust Financial Corporation ("Wintrust") and Barrington Bank & Trust Co., N.A. ("Barrington"), (collectively "Defendants" or "Wintrust"[1]) alleging unlawful discrimination based upon race, in violation of the Equal Credit Opportunity Act ("ECOA"), 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the Fair Housing Act ("FHA"), *see* [1]. She also brings state law claims.

---

[1] The Second Amended Complaint refers to Defendants jointly as "Wintrust." [34] at 1. The Court adopts this approach, only for purposes of stating the factual allegations. Plaintiffs' allegations concerning Wintrust and Barrington raise a question of parent-subsidiary liability, but this Court need not address that question, since it finds the allegations otherwise insufficient and dismisses this case with prejudice. [33] at 2, n.2.

On Defendants' prior motion [28], the Court dismissed Plaintiffs' First Amended Complaint ("FAC"), [22], for failure to state a claim, *see* [33]. Plaintiff has again amended her complaint, asserting the same claims. *See* [34].

Defendants have again moved to dismiss all claims against them. [38]. Because Plaintiff has failed to correct the deficiencies in the FAC, as explained below, the Court grants Defendants' motion, [38].

I. **The Second Amended Complaint's Allegations[2]**

Plaintiff is an African American woman and well-qualified home borrower. [34] ¶ 22. In 2020, she began communicating with a Wintrust loan originator to obtain a mortgage loan "with the lowest rate and most favorable terms in connection with her purchase of residential real estate in Bronzeville, a majority-Black neighborhood in Chicago." *Id.* ¶ 23. Plaintiff's loan officer wrote to her in March 2020 that "Wintrust would provide her with the 'best structure and rates.'" *Id.* ¶ 24. Wintrust also told Plaintiff it would offer her a "float down" at no charge, which would provide Plaintiff a lower interest rate if market rates decreased. *Id.* ¶ 29. Despite those representations, Plaintiff alleges that because of her race and because she was purchasing property in a majority-Black neighborhood, Wintrust "had no intention" of providing her the best rate or a free float down. *Id.* ¶¶ 31, 33. Instead, Wintrust "refused to provide Plaintiff a 'float down' option" and offered her a "higher interest rate with less favorable terms and conditions." *Id.* ¶¶ 30, 25.

---

[2] The Court draws the facts from Plaintiff's Second Amended Complaint, [34], which it takes as true for purposes of the motion to dismiss.

Plaintiff claims that Wintrust has "policies and practices" governing home loans and refinancing, and those policies "intentionally and disproportionately discriminate against and harm Black and/or African American customers." *Id.* ¶¶ 6, 20. As a result, she alleges that she, and other Black and/or African American borrowers, have been injured by "Wintrust's racially discriminatory residential mortgage lending policies and practices." *Id.* ¶ 6.

Regarding Wintrust's "policies or practices," the SAC alleges that Wintrust employs Fannie Mae's Desktop Underwriter program "which provides information to lenders on a mortgage loan's eligibility for future sale to Fannie Mae." *Id.* ¶ 8. Wintrust also maintains its own "'proprietary' policies and practices to set rates, costs, and fees." *Id.* Under these policies and practices, "Wintrust alone makes the decision whether to extend credit and on what terms." *Id.* Thus, "the fact that an applicant is approved under Desktop Underwriter does not guarantee that Wintrust will approve the loan." *Id.*

To support her discrimination claims, Plaintiff again relies upon nationwide data that Wintrust reported pursuant to the Home Mortgage Disclosure Act in 2020. *Id.* ¶¶ 9–19. For example, Plaintiff states that in 2020, Wintrust "originated loans to approximately 80% of white borrowers who applied for a home purchase mortgage through Wintrust Mortgage, compared to only 65% of Black and/or African American applicants." *Id.* ¶ 9. Wintrust's Black and/or African American borrowers nationwide also spent "approximately 3.3% of their Wintrust Mortgage loan value on costs and fees, versus 2.9% for white borrowers." *Id.* ¶ 14. As for refinancing, from 2018–2022,

Plaintiff alleges a statistically significant racial disparity in Wintrust's granting of refinance mortgage applications between white and Black borrowers "after controlling for debt-to-income ratio, loan amount, income, property value, loan-to-value ratio, loan term, and year of application." *Id.* ¶ 18.

Based upon these disparities, Plaintiff brings race discrimination claims under four federal statutes: the Equal Credit Opportunity Act (Count I), 42 U.S.C. § 1981 (Count II), 42 U.S.C. § 1982 (Count III), and the Fair Housing Act (Count IV).

## II.     Legal Standard

To survive a motion under Rule 12(b)(6), a complaint must not only provide Defendants with fair notice of a claim's basis but must also be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the complaint need not include detailed factual allegations, plaintiff's obligation to provide the grounds for his entitlement to relief requires more than mere labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together"; in ruling on the motion, the court asks whether these things could have happened, not whether they did happen. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

On a motion under Rule 12(b)(6), this Court accepts as true all well-pled facts in the complaint and draws all reasonable inferences from those facts in Plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

### III. Discussion and Analysis

#### A. Theories of Liability in the SAC

Plaintiff asserts two theories of liability premised upon Defendant's alleged discrimination: disparate treatment (or intentional discrimination), and disparate impact. Plaintiff brings all four counts under a theory of disparate treatment and brings only Counts I and IV under the additional theory of disparate impact.[3]

As before, Plaintiff's allegations of discrimination, and the theories of discrimination she advances, are materially identical in each count. *See* [33] at 7 (addressing FAC's claims together). Therefore, the Court evaluates Plaintiffs' intentional discrimination claims (for Counts I through IV) and disparate impact claims (for Counts I and IV) together. *See, e.g., Watters v. Homeowners' Ass'n*, 48 F.4th 779, 789 (7th Cir. 2022) ("A claim under § 1982 and the FHA both require proof of an intent to discriminate, so the two claims often rise and fall with each other.").

#### B. Disparate Treatment

The parties' briefing reveals a dispute concerning the pleading requirements for Plaintiffs' disparate treatment claims. Plaintiff argues that although her claim is

---

[3] Section 1981 and section 1982 require purposeful discrimination, so a disparate impact theory of liability is unavailable for Counts II and III. *See* [33] at 9.

"more involved" than an individual claim of intentional discrimination, it is "not as complicated as a *Monell* claim or a claim of a 'vast conspiracy' which require extensive factual pleadings." [49] at 12. Therefore, she claims, her allegations in the SAC are sufficient to state a disparate treatment claim.

First, a point of clarification. The Court did not hold in its prior order, [33], that Plaintiff's disparate treatment claims here require *extensive* factual pleadings. Rather, this Court merely stated—as Plaintiff concedes, *see* [49] at 12—that her alleged theory is more complicated than, for example, a claim that an individual loan officer or officers discriminated against Plaintiff, an individual, in her mortgage loan application. See [33] at 8. Here, Plaintiff's claims involve "class pattern-and-practice" allegations that Wintrust maintains uniform policies and practices governing mortgage loans and refinancing that systemically discriminate against African American and/or Black applicants. *See* [34] at 2; [49] at 12. Therefore, more factual allegations are required to render Plaintiff's claims plausible under the *Twombly/Iqbal* standard. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2011) ("The required level of factual specificity rises with the complexity of the claim.")).

Arguing her allegations are sufficient, Plaintiff analogizes her disparate treatment claims to the claims in *Swanson v. Citibank* and then contends that the SAC satisfies her obligations to allege "the type of discrimination she thinks occurs," "when," and "by whom." [49] at 11 (citing *Swanson*, 614 F.3d at 405). But *Swanson* involved a "straightforward" housing-discrimination claim, in which an African

American loan applicant alleged that the defendant denied her single application based upon her race in violation of the Fair Housing Act. Thus, the Court explained that plaintiff's complaint, which alleged "the type of discrimination that she thinks occurs (racial), by whom (Citibank, through Skertich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan), was sufficient to state a claim for intentional discrimination under the FHA. *Swanson*, 614. F.3d at 402. As the Seventh Circuit later noted in *McCauley*, the discrimination claim "at issue in *Swanson* was quite straightforward." *McCauley*, 671 F.3d at 619. Thus, putting "the defendant on notice of what it entailed was simple," such that the plaintiff "did not need to plead much by way of factual content." *Id.* By contrast, the *McCauley* court required more factual allegations to survive dismissal where the plaintiff alleged that the City had an "unwritten custom, practice and policy" that gave rise to an equal protection violation. *Id.* at 617.[4]

Here, Plaintiff does not allege, even in the alternative, a straightforward individual claim based upon an individual loan officer's animus toward Plaintiff because of her race, as in *Swanson*. *See* [33] at 8, n.6. Rather, she alleges that Defendants maintained a set of "uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against Black and/or African American mortgage loan and refinancing applicants and recipients that constitutes illegal intentional discrimination." [34] ¶

---

[4] Indeed, the *McCauley* court distinguished *Swanson*, noting that the allegations in that case were "uncomplicated," so pleading fewer allegations was enough; in *McCauley*, however, more facts were required to render the claim plausible. *McCauley,* 671 F.3d at 617.

44. Thus, Plaintiff must plead more detailed factual allegations to render her claims of uniform policies of systemic and intentional race discrimination plausible.

Turning to the sufficiency of the allegations, the FAC fell far short in plausibly alleging intentional discrimination because it alleged that Wintrust's policies "include the potential for loan officers to exercise discretion in setting rates, costs, and fees," [33] at 9, but included *no* allegations of discriminatory animus in the officers' exercise of such discretion. The SAC does not fix that problem. Again, it fails to provide any allegations suggesting discriminatory animus in the use of that discretion. The only factual allegation Plaintiff adds this time, to purportedly suggest an intent to discriminate, is a delegation of the discretion to set costs, fees, and rates, that is assigned to "largely non-Black loan personnel." *Id.* ¶ 21. This addition does nothing to advance the ball; the mere fact that many of Wintrust's loan officers happen to be non-Black cannot, without more, render plausible Plaintiff's claims that Wintrust maintains practices and policies that systemically and intentionally discriminate against African American and/or Black loan applicants.

Opposing dismissal, Plaintiff merely recites statistics demonstrating that Wintrust generally approves loans for Black and/or African American borrowers at lower rates and with worse terms than it does for white borrowers. But Plaintiff again fails to connect this disparate *outcome* to Defendants' intent. Accordingly, Plaintiff's allegations remain insufficient to state a claim of intentional discrimination under the ECOA, § 1981, § 1982, or the FHA.

Because Counts II and III are predicated exclusively upon an insufficient disparate treatment theory of liability, the Court dismisses these claims.

### C. Disparate Impact

The Court next considers Plaintiff's allegations of disparate impact discrimination alleged in Counts I (ECOA) and IV (FHA). To plead a disparate impact claim under the FHA, Plaintiff must allege: (1) a statistical disparity; (2) that the defendant maintained a specific policy; and (3) such policy caused the disparity. *Cty. of Cook v. Wells Fargo & Co.*, 314 F. Supp.3d 975, 990 (N.D. Ill. 2018) (citing *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 541–42 (2015)). Likewise, to state a claim under the EOCA, Plaintiff must: "(1) identify a specific, facially neutral policy or practice adopted by the defendant; (2) allege a disparate impact on a protected group; and (3) show a causal relationship between the challenged policy or practice and the alleged disparate impact." *Pettye v. Santander Consumer, USA, Inc.*, No. 15 C 7669, 2016 WL 704840, at *4 (N.D. Ill. Feb. 23, 2016) (citing *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)).

This Court previously dismissed the disparate impact claims in the FAC because Plaintiff failed to plausibly allege any connection between a specific policy of Defendants' and any identified disparities, let alone facts to satisfy the "robust causality requirement" adopted in *Inclusive Communities*. 576 U.S. at 542 (emphasizing that a "plaintiff who fails to allege facts at the pleading stage or produce

statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact").

As this Court explained in its prior order, causation may be satisfied at the pleading stage when the complaint's allegations contain sufficient details about the policy at issue to infer causation, but Plaintiff has not provided any details about Wintrust's policies or practices, only generally alleged "categories of policies." [33] at 11; *see also County of Cook v. Bank of America Corporation*, No. 14 C 2280, 2018 WL 1561725, at *1 (N.D. Ill. Mar. 30, 2018) (denying motion to dismiss where the complaint described numerous components of a specific policy—a predatory equity-stripping scheme—and *how* the components of that scheme had a disproportionately impacted African American and Hispanic Latino home buyers).

In the prior order, this Court also explained that "statistics showing that disparities remain, *after controlling in objective criteria*, can bolster such a claim." *Id.* at 12 (emphasis in original). Plaintiff hinges her current argument on this language—that statistics controlling for objective factors can bolster a disparate impact claim—in an effort to save her claims. [49] at 5. She asserts that the SAC now includes statistics revealing "substantial racial disparities for Black Wintrust applicants and borrowers *after applying controls*" for six "available relevant factors." [49] at 5 (emphasis added). But Plaintiff misunderstands this Court's prior order and controlling precedent. This Court did not hold that statistics indicating racial disparities, even after controlling for certain objective criteria, would suffice to state

a disparate impact treatment claim. Among other things, such a holding would have directly contravened binding precedent in *Inclusive Communities.*

In *Inclusive Communities,* the Court recognized the theory of disparate impact liability under the FHA, but stated that such liability is "properly limited in key respects," including that it should not be "imposed based solely on a showing of a statistical disparity," 576 U.S. at 540, and that the challenged policy must also be "artificial, arbitrary, and unnecessary," *id.* at 521. Therefore, the Court explained, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." 576 U.S. at 542 (emphasis added).[5] *See also City of Joliet, Illinois v. New W., L.P.,* 825 F.3d 827, 830 (7th Cir. 2016) (noting that *Inclusive Communities* "stressed the importance of considering both whether a policy exists and whether it is justified"); *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1114 (8th Cir. 2017) ("Under *Inclusive Communities*, a plaintiff must, at the very least, point to an 'artificial, arbitrary, and unnecessary' policy causing the problematic disparity.").

Accordingly, under *Inclusive Communities*, alleging statistics showing disparities based upon race is not enough to plead a plausible disparate impact claim. Here, Plaintiff does just that; she relies exclusively on statistics depicting disparities between white and Black applicants for mortgage and refinancing approvals,

---

[5] The Court directed district courts to "examine with care whether a plaintiff has made a prima facie case of disparate impact," explaining that a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Inclusive Communities,* 576 U.S. at 543. It explained, if the plaintiff "cannot show a causal connection between the…policy and a disparate impact…that should result in dismissal of [the] case." *Id.*

controlling for six other factors. These statistics, alone, do not give rise to the reasonable inference that any particular practice or policy of Defendants has caused that disparity such that Defendants can be held liable under the statute. *See Inclusive Communities*, 576 U.S. at 543 (acknowledging that while it may sometimes be "difficult to establish causation," such a requirement is necessary to "protect defendants from being held liable for racial disparities they did not create"); *see also Cnty. of Cook v. Wells Fargo,* 314 F. Supp. 3d 975, 990 (N.D. Ill. 2018) (noting "after identifying a statistical disparity," the plaintiff must then "point to a defendant's policy or policies causing that disparity"); *TBS Group, LLC v. City of Zion, Illinois*, No. 16-cv-5855, 2017 WL 5129008, at *10 (N.D. Ill. Nov. 6, 2017) (explaining that statistics might be "helpful in adequately alleging a disparate impact claim," but to state a claim, statistics must be offered "in combination" with alleged "practices" that purportedly caused alleged disparities).

In addition, Defendants also correctly note that Plaintiff fails to identify a challenged policy that is "artificial, arbitrary, and unnecessary" as required by *Inclusive Communities*, 576 U.S. at 521, and thus, Plaintiff's allegations fail to provide sufficient details about a policy or practice of Defendants' from which this Court can reasonably infer causation and the other requisite features of the claim.

In sum, to survive dismissal, the SAC's allegations must connect the alleged statistical disparities between Black and non-Black applicants to specific policies or practices of the Defendants that remain "artificial, arbitrary, and unnecessary" under

the law. Plaintiff fails to do so, and this failure is fatal. The Court therefore dismisses Counts I and IV.

### D. State Law Claims

In the Second Amended Complaint, Plaintiff remains unable to allege a viable federal claim to support the exercise of supplemental jurisdiction over her state law claims. 28 U.S.C. § 1367. Therefore, the Court dismisses Plaintiff's state law claims in Counts V, VI, and VII as well. *Vargas v. Cook Cnty. Sheriff's Merit Bd.*, 952 F.3d 871, 876 (7th Cir. 2020) ("When the claims supporting federal jurisdiction drop out of the case, the usual practice is to relinquish jurisdiction over any remaining state-law claims.").

## IV. Conclusion

After a prior opportunity to amend, the Plaintiff cannot survive Defendants' motion to dismiss. Consequently, for the reasons explained above, the Court grants Defendants' motion [38] and dismisses the Second Amended Complaint with prejudice. Civil case terminated.

Dated: February 5, 2026

_____
John Robert Blakey
United States District Judge